NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE ASHTON, :<br><br>Plaintiff, :<br><br>v. :<br><br>AT&T CORPORATION, :<br><br>Defendant. : | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 03-CV-3158 (DMC) |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon motion by AT&T Corporation ("Defendant"),

for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on all counts

of the Complaint filed by Jane Ashton ("Plaintiff"). No oral argument was heard pursuant to

Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's

motion is **granted**.

## I. BACKGROUND

Plaintiff brought this action against Defendant, her former employer, under the New

Jersey Jury Service Statute, N.J. Stat. Ann. § 2B:20-1 et seq.; the New Jersey Law Against

Discrimination ("LAD"), N.J. Stat.Ann.§ 10:5-2.1; the American with Disabilities Act of 1990

("ADA"), 42 U.S.C. § 12101; and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601.

Plaintiff claims Defendant violated N.J.S.A. § 2B:20-17 by retaliating against her for serving as a

juror. Plaintiff also alleges Defendant violated the NJLAD and the ADA by failing to provide a reasonable accommodation for her alleged mental disability and by subjecting her to disparate treatment. Finally, she claims Defendant violated the FMLA by retaliating against her for taking medical leave.

Plaintiff began working for Defendant on March 17, 2002, and held a number of different positions during the term of her employment. (Defendant's Statement of Material Facts ("Def. R. 56.1 Stmt.") at 2). On January 1, 2002, she became a Customer Relations Specialist ("CRS"), which entailed assisting business clients. (Id.). In February 2002, Plaintiff's supervisor gave her a "Below Target" rating on her annual performance assessment. ("Plaintiff's Brief in Opposition ("Pl. Br."), at 2).

From June 4, 2002, until August 4, 2002, Plaintiff took a short term disability leave due to mental impairments. (Id.) She continued to receive her usual salary during this period. (Defendant's Brief in Support of Motion for Summary Judgment ("Def. Br."), at 8). In an attempt to ease her return to the workplace, Plaintiff requested she be allowed to work from home part time beginning August 5, 2002. (Pl. Br. at 3). Defendant granted the request and on August 8, 2002, Plaintiff began working full-time from home. (Id.) At the end of August, Plaintiff informed Defendant that she would like to continue working from home until October. (Def. Br. at 9). Defendant denied this request and told Plaintiff to return to the office by September 12, 2002, at which time both parties could engage in a discussion about other possible accommodations. (Def. Br. at 9 -10). Plaintiff refused to return to work as requested and on September 11, 2002, she took another disability leave. (Pl. Br. at 4).

-2-

On October 4, 2002, Metlife, Defendant's disability benefits provider, denied Plaintiff's application for short term disability benefits because her medical documentation did not support Plaintiff's disability claim. (Id. at 5). Once Defendant learned Metlife denied the disability claim, Plaintiff was told to return to work by October 25, 2002. (Def. Br. at 11-12). Plaintiff then informed Defendant she would not return to work on October 25 and that she would be taking the following week off as vacation. (Pl. Br. at 8). In response, Defendant gave Plaintiff two options: (1) return to work and discuss alternative accommodations besides working from home; or (2) take a sixty day leave of absence from her current job in order to seek another position at AT&T. (Id.) If Plaintiff failed to find another position during that time, she would be terminated at the end of the sixty days. (Def. Br. at 13). Plaintiff chose the latter option but failed to find another position during the sixty-day period. (Id. at 14). As a result, Plaintiff's employment was terminated on January 3, 2003. (Def. R. 56.1 Stmt. at 14).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming Defendant discriminated against her due to her disability in violation of the ADA. (Id.) The EEOC dismissed the Charge on April 30, 2003, after finding her allegations did not involve a disability covered by the ADA. (Id.) Plaintiff then filed a pro se Complaint before this Court on July 1, 2003.

## II. DISCUSSION

### A. Standard

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of

material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of

showing either (1) there is no genuine issue of fact and it must prevail as a matter of law; or (2)

that the non-moving party has not shown facts relating to an essential element of the issue for

which he bears the burden. Celotex, 477 U.S. at 331.  If either showing is made then the burden

shifts to the non-moving party, who must demonstrate facts that support each element for which

he bears the burden and must establish the existence of genuine issues of material fact. Id.  The

non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy

this burden, Fed. R. Civ. P. 56(e), but must produce sufficient evidence to support a jury verdict

in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

### B. Plaintiff's Jury Service Claim

N.J.S.A. § 2B:20-17 prohibits employers from taking adverse action against employees

for performing jury service.  If an employer does threaten or penalize an employee for partaking

in this civic duty, the employee must commence an action against the employer regarding these

acts "within 90 days from the date of the violation or the completion of jury service, whichever is

later." N.J.S.A. § 2B:20-17(c).

In this case,  Plaintiff served as a grand juror in Essex County,  New Jersey,  during

March through June of 2002.  (Pl. Br. at 2).  Her service required her to be absent from work

every Friday during those months.  (Def. Br. at 6-7).  Plaintiff alleges Defendant penalized her

for performing her jury service.  (Id.)  The Court does not have to consider the merits of this

claim at this time because Plaintiff's claim under the statute is untimely.  She completed jury duty on June 14, 2002, and the Defendant's termination of her employment became effective on January 3, 2003.  (Id. at 16).  In order for Plaintiff to have a timely claim under the statute, the latest date she could have commenced her action was April 3, 2003.  Instead, Plaintiff did not file her Complaint until July 1, 2003, three months after the statute of limitations had run.  In fact, Plaintiff's initial Complaint failed to even mention any cause of action under the jury service statute.  It was not until she filed her Amended Complaint on November 17, 2003, more than seven months after the statute limitations had expired, that Plaintiff raised her first claim under the statute.  Due to Plaintiff's failure to file a timely claim, her jury service claim is barred.

### C. Plaintiff's Claim under the New Jersey Law Against Discrimination

The New Jersey LAD exists to ensure that all New Jersey citizens enjoy the civil rights guaranteed by the State Constitution, especially in the work place.  N.J.S.A. § 10:5-2.1.  Because the overarching goal of the LAD is to rid society of discrimination, the New Jersey Supreme Court has advised courts to liberally construe its provisions.   Dale v. Boy Scouts of America, 160 N.J. 562 (1999).  Although the LAD's protections have been broadly interpreted, the LAD does not prevent an employer from terminating or changing the employment of any person the employer reasonably believes is unable to perform the duties necessary for the job.  Viscik v. Fowler Equipment Company, Inc., 173 N.J. 1, 13 (2002)

In order to receive coverage under the LAD for disparate treatment, a plaintiff must first establish a prima facie case of discrimination.  Id. at 12.  The New Jersey Supreme Court has

adopted the burden-shifting framework set forth by the Supreme Court of the United States in

McDonnell Douglas Corp. v Green, 411 U.S. 792 (1973).  Under this framework, a plaintiff must

show: (1) that he or she belongs to a protected class; (2) applied for or held a position for which

he or she was objectively qualified; (3) was not hired or was terminated from that position; and

(4) that the employer sought to, or did fill the position with a similarly-qualified person.

Anderson v. Exxon Co., U.S.A., 89 N.J. 483, 493 (1982).  This framework is not to be applied

too rigidly and courts must adjust it to meet the particular circumstances at hand.   Viscik, 173

N.J. at 13.  In cases involving the discriminatory discharge of a disabled person, the employee

must prove: (1) that she was handicapped; (2) that she was performing her job at a level that met

her employer's legitimate expectations; (3) that she nevertheless was fired; and (4) that the

employer sought to have the same work completed after she left.  Id. at 14-15.

     Here, Plaintiff must first prove that she fits the statutory definition of "handicapped"

under the LAD.  N.J.S.A. § 10:5-5(q) lists two categories of handicap, physical and non-physical.

 In order for a plaintiff to have a non-physical handicap, she must satisfy the following elements:

(1) she is suffering from any mental, psychological or developmental disability (2) resulting from

an anatomical, psychological, physiological or neurological condition that either (a) prevents the

normal exercise of any bodily or mental functions or (b) is demonstrable, medically or

psychologically, by accepted clinical or laboratory diagnostic techniques.  Viscik, 173 N.J. at 16.

Where the existence of a plaintiff's alleged handicap is not readily apparent, the plaintiff must

produce expert medical evidence indicating that the handicap exists.  Clowes v. Terminix Int'l,

Inc., 109 N.J. 575, 591-93 (1988).  The use and strength of objective medical testimony therefore

plays a crucial role during a court's determination of whether a plaintiff is handicapped.  Viscik,

173 N.J. at 16.

      Psychological disorders qualify as non-physical handicaps.   Here Plaintiff must prove

she belongs in the non-physical category because she claims to be suffering from anxiety, stress

disorder and agoraphobia, which are all psychological disabilities. (Pl. Br. at 14).  In order to

succeed she must present expert medical testimony or evidence indicating that the handicap

exists.  The only medical evidence Plaintiff has submitted is a copy of her medical file, which

fails to sufficiently indicate that she is handicapped under the LAD's definition.  She has

submitted no letters or reports from her doctors or any experts in support of her claim.  Without

medical evidence establishing that she is handicapped, Plaintiff cannot satisfy the first prong of a

prima facie case under the LAD.  If a plaintiff fails to satisfy the first prong of the McDonnell

Douglas framework, the analysis ends there.  Plaintiff's claim under the LAD therefore fails and

Summary Judgment on this count must be granted.

### D.  Plaintiff's Claim under the Americans with Disabilities Act (ADA)

      The ADA prohibits employers from discriminating against a "qualified individual with a

disability because of the disability of such individual in regard to job application procedures, the

hiring, advancement, or discharge of employees, employee compensation, job training, and other

terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The ADA defines a

"qualified individual with a disability" as someone with a disability "who, with or without

reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A "disability" is a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). In order to establish a prima facie case under the ADA, a plaintiff must show: "(1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination." Gaul v. Lucent Tech., 134 F.3d 576, 580 (3d Cir. 1998).

In this case, Plaintiff must establish she has a disability by proving she has a mental impairment that substantially limits a major life activity. 42 U.S.C. § 12101(2). Unlike decisions surrounding the LAD, there is currently no case law or regulations requiring plaintiffs to present medical testimony to show they have a disability under the ADA. Marinelli v. City of Erie, Penn. 216 F.3d 354, 360 (2000). However, the Third Circuit has addressed this issue. The Court held that the necessity of presenting medical evidence turns on the extent of which the alleged impairment is within the comprehension of a jury lacking a command of medical or otherwise scientific knowledge. Id. For example, in a case where a plaintiff has lost a limb, medical evidence would not be necessary to prove that the plaintiff is in fact disabled.

Here, Plaintiff is claiming to be disabled due to anxiety, a stress disorder, and agoraphobia. (Pl. Br. at 14). These are not disabilities that are readily apparent, nor can they be observed with the naked eye, such as a missing limb. The average person serving on a jury

cannot be expected to know all of the elements and difficulties associated with Plaintiff's alleged disabilities. At a minimum, an understanding of agoraphobia would be necessary for a jury to determine whether Plaintiff is in fact disabled under the ADA, making the inclusion of medical evidence necessary. As previously explained, Plaintiff failed to present medical evidence of her alleged disorder which also means that she has failed to demonstrate that she is disabled under the first prong of the ADA analysis. Because Plaintiff cannot satisfy the first prong there is no need for further analysis under the ADA framework.

### E. **Plaintiffs Claim under the Family Medical Leave Act**

The FMLA allows employees to take up to twelve weeks of necessary medical leave in a year without being placed in jeopardy of losing their jobs. 29 U.S.C. § 2601. The purpose of the FMLA is to "balance the demands of the workplace with the needs of families . . . by establishing a minimum labor standard for leave" that allows employees to take a "reasonable leave for medical reasons." Churchhill v. Star Enter., 183 F.3d 184, 192 (3d. Cir. 1999). In order to bring a successful claim under the FMLA, a plaintiff must show: (1) she is an eligible employee under the FMLA; (2) defendant is an employer subject to the requirements of the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave notice to the defendant of her intention to take FMLA leave; and (5) the defendant denied her the benefits to which she was entitled under the FMLA. Parker v. Hahnemann Univ. Hosp., 234 F. Supp. 2d 478, 483-84 (D.N.J. 2002).

A plaintiff can seek recovery under the FMLA by asserting a claim under either an

entitlement theory or a retaliation theory.  Id. at 485.  Here Plaintiff has asserted a retaliation

claim.  (Pl. Br. at 38).  The retaliation theory of recovery prevents employers from discriminating

against employees for having exercised their rights under the FMLA.  Parker, 234 F. Supp. 2d at

487-88.  In disposing of retaliation claims, courts must again apply the McDonnell Douglas

burden-shifting analysis discussed above.  Gventer v. Theraphysics Partners of Western Pa., Inc.,

41 Fed. Appx. 552, 553 (3d Cir. 2002).  Using this framework in FMLA cases, a plaintiff must

show: (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected

by an employment decision; and (3) there is a causal connection between the employee's

protected activity and the employer's adverse employment action.  Hodgens v. Gen'l Dynamics

Corp., 144 F.3d 151, 161 (1st Cir. 1998).

Here, Plaintiff fails to present a prima facie case.  In order to be exercising a protected

right under the FMLA, a plaintiff must be taking leave from work for medical reasons.  Parker,

234 F. Supp. 2d at 483.  Plaintiff does not put forth sufficient medical evidence demonstrating

she was availing herself of a protected right under the FMLA.  As previously discussed, Plaintiff

failed to present adequate medical documentation to prove she was suffering from a disability or

any other medical condition.

Furthermore, even if Plaintiff did satisfy the first prong by showing she is protected under

the FMLA, she fails to satisfy the other prong by showing there was a causal connection between

the employee's protected activity and the employer's adverse employment action.  In order for an

employment decision to constitute an "adverse employment action" under the FMLA, the

adjustment must be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Inds., Inc. v Ellerth, 524 U.S. 742, 760 (1998). Here, Plaintiff was terminated from her job because she failed to secure another position with the Defendant during the sixty-day leave of absence she chose to take. Plaintiff had the option of returning to the office to perform her job. Instead, she chose to take the leave from work to find a new position. At the time she made this decision, Plaintiff was well aware that if she failed to secure a new position within that period, Defendant would terminate her employment. Also, denial of Plaintiff's request to work from home does not constitute a "significant change" in employment as defined by the Supreme Court. Plaintiff's benefits, salary, status, and duties were not altered with the Defendant's denial of her request to remain at home. Plaintiff has failed to meet the burden set by the FMLA. Defendant's motion for summary judgment in regard to this claim is granted.

### III. CONCLUSION

For the reasons stated, it is the finding of this Court that Defendant's motion for Summary Judgment is **granted** . An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:        September 21, 2005
Original:    Clerk's Office
Cc:          All Counsel of Record
             The Honorable Mark Falk, U.S.M.J.
             File

-11-